NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA RICKERSON, INDIVIDUALLY & IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF DAVID RICKERSON,<br>                  Plaintiff,<br>v.<br>PINNACLE FOODS INC., JOHN M. NAES, BARRY CHAPIN, MICHAEL WITTMAN, JOHN DOES 1-10 & ABC CORPS 1-10,<br>                  Defendants. | Case No. 2:17-cv-04469 (SDW)(LDW)<br><br>**OPINION**<br><br>December 5, 2017 |

**WIGENTON**, District Judge.

Before the Court is Defendants Pinnacle Foods Inc., John M. Naes, Barry Chapin, and Michael Wittman's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part.**

I.  BACKGROUND & PROCEDURAL HISTORY

This civil action was brought by Plaintiff Barbara Rickerson ("Plaintiff"), individually, and as the executrix of her deceased husband David Rickerson's ("Mr.

1

Rickerson") estate. Mr. Rickerson, who died on June 23, 2016, had previously been an employee of Defendant Pinnacle Foods Inc. (*See generally* ECF. No. 4-2, Complaint ("Compl.")[1].)

Defendant Pinnacle ("Pinnacle"), headquartered in Parsippany, New Jersey, is a producer of various consumer food products. In May 2013, Pinnacle hired Mr. Rickerson to work at its Parsippany headquarters as Senior Director of Engineering in the Supply Chain Department. (Compl. at 3 ¶ 1.) At all times relevant to the Complaint, Defendant John M. Naes ("Naes"), Pinnacle's then Vice-President of Engineering, was Mr. Rickerson's immediate supervisor, Defendant Barry Chapin ("Chapin") was Pinnacle's Senior Director, and Defendant Michael Wittman ("Wittman") was Pinnacle's President and Chief Executive Officer. (Compl. at 2 ¶¶ 3-5.)

From May 2015 to May 2016, Mr. Rickerson worked to open a new manufacturing facility in Hagerstown, Maryland for Pinnacle. In the course of his duties, Mr. Rickerson reviewed Pinnacle's project estimate for the facility and identified "some missing key components, estimating a minimum of $2.5M to $3M deficit in the project budget." (*Id*. at 4 ¶ 5.) Mr. Rickerson shared his concerns regarding the budget with Defendants Chapin and Naes. (*Id*.) Despite Mr. Rickerson's concerns, Chapin and Naes presented a lower budget estimate to Pinnacle's Board of Directors, who approved the project on or about June 11, 2015. (*Id*. at 4 ¶ 7.) From June to July 2015, Chapin gradually reduced the total cost of the project, beginning with an overall project cost of $33M and concluding with a cost of $30.7M. (*Id*. at 4-5 ¶¶ 7-12.) Pinnacle subsequently reported the lower project estimate to its shareholders and to the Securities and Exchange Commission ("SEC"). (*Id*. at 7 ¶ 17). Plaintiff also claims Naes ignored Mr. Rickerson's concerns

---

[1] Each section of Plaintiff's Complaint restarts the numbering of the allegations contained therein. To prevent any confusion, this opinion cites to the page number and paragraph of each allegation.

about funding issues regarding the scope and layout of the Haggerstown project, calling them "noise." (*Id*. at 8 ¶ 21, at 11 ¶ 26.) Plaintiff contends that Naes further ignored Mr. Rickerson's safety concerns, such as the use of rotting insulation in the facility. (*Id.* at 9 ¶ 22.)

On February 12, 2016, Mr. Rickerson determined that the total costs of the project would be $50M in capital alone. (*Id*. at 12 ¶ 30.) Plaintiff alleges that Naes instructed Mr. Rickerson to generate a cash flow document moving $2.5M from fiscal year 2016 to fiscal year 2017, which would have "essentially falsified Pinnacle financial documents." (*Id.*) Mr. Rickerson reported to John Kroeger ("Mr. Kroeger"), Pinnacle's Lead Legal Counsel and Chief Ethics Officer, that Naes had "directed people to violate company policy and that they were terminated." (*Id.*) Shortly thereafter, on February 25, 2016, Wittman, Pinnacle's CEO stopped the Hagerstown project after a review of the costs and potential issues. (*Id*. at 13 ¶ 34.)

On May 4, 2016, Mr. Rickerson's employment was terminated. Upon Mr. Rickerson's termination, Naes and Sarmela Chandlella, the Senior Director of Human Resources for Pinnacle, took Mr. Rickerson's laptop, all belongings in Mr. Rickerson's desk, his laptop bag (which included personal papers), a Verizon Jetpack (which included Mr. Rickerson's private computer), and his company stocks, valued at approximately $1M. (*Id.* at 14 ¶ 39.) Pinnacle also cancelled Mr. Rickerson's life insurance policy. (*Id.*) On June 23, 2016, Mr. Rickerson was found dead of a self-inflicted gunshot wound to his head. (*Id*. at 14 ¶ 40.) As a result of Mr. Rickerson's death, Plaintiff alleges that she suffers from Post-Traumatic Stress Disorder and also suffered monetary losses from her husband's death, including a loss of income and relocation costs. (*Id*. at 15 ¶ 41.)

On May 1, 2017, Plaintiff filed a ten-count Complaint against Defendants in the Superior Court of New Jersey alleging: violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1 *et seq.* (Count One); Wrongful Termination (Count Two); Conversion

3

(Count Three); Intentional Infliction of Emotional Distress (Count Four); Loss of Consortium (Count Five); Wrongful Death (Count Six); Survival Action (Count Seven); Fraud (Count Eight); Unjust Enrichment (Count Nine); and Negligence (Count Ten).[2] (*See generally* Compl.) Defendants removed the case to this Court on June 19, 2017 (ECF. No. 1), and filed the instant Motion to Dismiss on June 20, 2017. (ECF. No. 4.) Plaintiff filed her opposition on July 17, 2017, and Defendants timely replied on July 27, 2017. (ECF. Nos. 9, 11.)

On September 29, 2017, Defendants submitted a letter requesting the Court to consider the recent decision in *Abu-Ali v. Pinnacle Foods Grp., LLC*, Docket No. A-1895-15T2, 2017 N.J. Super. Unpub. LEXIS 2464, at *18-21 (N.J. Super. Ct. App. Div. Sept. 26, 2017). (ECF. No. 12)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that a pleader is entitled to relief." This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The pleading standard under Rule 8 requires "more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted); *Dillin v. Constr. & Turnaround Servs., LLC*, No. 14-8124, 2015 U.S. Dist. LEXIS

---

[2] Defendants did not move to dismiss Plaintiff's Negligence claim. (ECF. No. 4-1.)

124873, at *7-8 (D.N.J. Sept. 18, 2015). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. But, conclusory or bare-bones allegations will not do. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). *Iqbal* held, "to survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face. *Id.* at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (discussing the standard). If the court finds that a complaint is subject to dismissal under Rule 12(b)(6), it must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

### III. DISCUSSION

#### A. New Jersey Conscientious Employee Protection Act ("CEPA") (Count One)

CEPA prohibits employers from taking "any retaliatory action against an employee" who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ." N.J. STAT. ANN. § 34:19-3. To establish a CEPA retaliation claim, Plaintiff must demonstrate:

> (1) he . . . reasonably believed that his . . . employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he . . . performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3 c; (3) an adverse employment action was taken against him . . . ; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Young v. Twp. of Irvington*, 629 F. App'x 352, 356 (3d Cir. 2015) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005)). CEPA does not require an actual violation of a law

5

or regulation, only a reasonable belief that a violation has occurred. *See Dillin*, 2015 U.S. Dist. LEXIS 124873, at *9; *Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 552 (N.J. 2000).

To satisfy the first CEPA prong, Plaintiff need not identify a particular law, regulation, or public policy "as long as the court can identify the law or policy that might have been violated by the challenged conduct." *Griffin v. Metromedia Energy, Inc.*, No. 10-3739, 2011 U.S. Dist. LEXIS 15183, at *6-8 (D.N.J. Feb. 7, 2011) (quoting *Brennan v. Palmieri*, No. 07-4364, 2008 U.S. Dist. LEXIS 102152, at *18 n.8 (D.N.J. Dec. 11, 2008) (internal citation omitted)). Here, the Complaint alleges that Mr. Rickerson believed that Naes and Chapin were wrongfully manipulating the stock and income of the company, presenting the inaccurate numbers to Pinnacle's shareholders and the SEC, and failing to address safety concerns in the facility in violation of company policy and public policy. (Compl. at 3 ¶ 2, at 7 ¶ 17, at 9 ¶ 22.) This sufficiently identifies laws and policies that would have been violated by inaccurately reporting and falsifying financial records. Thus, Plaintiff has satisfied the first prong.

To satisfy the second prong, Plaintiff must show that he engaged in a whistle-blowing activity. Whistle-blowing activity is defined as an objection to, or refusal "to participate in an activity, policy or practice which the employee reasonably believes (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .." N.J. STAT. ANN. § 34:19-3(c). The Complaint alleges that Mr. Rickerson objected to and reported what he believed to be unethical or illegal conduct by Naes and Chapin to Pinnacle's Chief Ethics Officer, Mr. Kroeger, and to other appropriate individuals. (Compl. at 16 ¶ 2.) Thus, Plaintiff has satisfied the second prong.

To satisfy the third prong, Plaintiff must allege that an adverse employment action was taken against him. There is no dispute that Mr. Rickerson was terminated from Pinnacle, and

termination is an adverse employment action. N.J. STAT. ANN. § 34:19-2(e). Thus, Plaintiff has satisfied the third prong.

Lastly, Plaintiff must show that there is a causal connection between the alleged whistle-blowing activity and his termination. In determining whether a causal connection exists, Plaintiff must allege some facts "such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." *Bowles v. City of Camden*, 993 F. Supp. 255, 264-65 (D.N.J. 1998). The evidence of a causal connection "may be circumstantial." *Maimone v. City of Atl. City*, 903 A.2d 1055, 1065 (N.J. 2006). Here, the Complaint alleges that Mr. Rickerson reported Naes and Chapin's conduct in February 2016 and was subsequently fired in May 2016. The Complaint also alleges that two months prior to being terminated, Mr. Rickerson received a positive performance review and Wittman specifically requested that Mr. Rickerson take the lead on the Hagerstown project. (Compl. at 13 ¶¶ 36-37.) This is sufficient to show a causal connection for purposes of surviving a motion to dismiss. Because Plaintiff has sufficiently pled all elements of a CEPA violation, Defendants' motion to dismiss Count One is denied.

### B. Wrongful Termination (Count Two)

In New Jersey, a statutory cause of action under CEPA does not preclude a common law cause of action for wrongful termination. *See Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980); *Tartaglia v. UBS PaineWebber, Inc.*, 961 A.2d 1167, 1179 (N.J. 2008) (noting that "[s]ince CEPA was enacted, the common law remedy recognized in *Pierce* has continued to exist side by side with the statutory one"). However, CEPA does include a waiver provision that bars claims substantially related and based on the same conduct as the CEPA claim in order "to prevent multiple claims based upon the same issue." *Hilburn v. Bayonne Parking Auth.*, No. 07-CV-5211,

2009 U.S. Dist. LEXIS 6762, at *26 (D.N.J. Jan. 29, 2009) (quoting *Espinosa v. Cty. of Union*, No. 01-CV-3655, 2005 U.S. Dist. LEXIS 36563, at *33 (D.N.J. Aug. 30, 2005), *aff'd on other grounds*, 212 Fed. App'x 146, 156 (3d Cir. 2007)); N.J. STAT. ANN. § 34:19-8. The waiver provision does not apply to causes of action that are substantially independent of the CEPA claim. *See Young v. Schering Corp.*, 660 A.2d 1153, 1160 (N.J. 1995).

Here, the Complaint does not set forth a cause of action for wrongful termination that is substantially independent of the CEPA claim. (Compl. at 17 ¶ 2.) To pursue a separate claim for wrongful termination, Plaintiff must plead additional facts. Therefore, Defendants' motion to dismiss Count Two is granted.

### C. Conversion (Count Three)

"Under New Jersey law, '[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property.'" *Peloro v. United States*, 488 F.3d 163, 173-74 (3d Cir. 2007) (quoting *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir.1990)). Accordingly, the elements of common law conversion are the existence of a property right belonging to the plaintiff and the wrongful interference with that right by defendant. *See McAdam*, 896 F.2d at 771.

In the instant matter, Plaintiff alleges that after Mr. Rickerson's termination, Pinnacle "seized his company stocks valued at approximately $1M" and cancelled his life insurance policy. (Compl. at 14 ¶ 39, at 17 ¶ 2.) Plaintiff fails, however, to plead that Mr. Rickerson had the right to immediate possession of those assets, or that Defendants wrongfully interfered with his right to the property. Even drawing all inferences in favor of Plaintiff, Plaintiff's allegations are insufficient to support a claim for relief that is plausible on its face. Accordingly, Defendants' motion to dismiss Count Three is granted.

8

### D. Intentional Infliction of Emotional Distress ("IIED") (Count Four)

To survive a motion to dismiss on an IIED claim under New Jersey law, Plaintiff must plead factual allegations sufficient to establish "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988). Intent requires Defendants to have intended "to do the act and produce emotional distress" or to act "recklessly in deliberate disregard of a high degree of probability that emotional distress would follow." *Id.* In addition, Defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)). Finally, Defendants' "actions must have been the proximate cause of [P]laintiff's emotional distress" and Plaintiff must have suffered emotional distress so severe that "no reasonable man could be expected to endure it." *Id.* (citing *Restatement*, *supra*, cmt. j).

Here, Plaintiff alleges that Defendants' intentional actions, which resulted in Mr. Rickerson's unjust termination and untimely death, constitute extreme and outrageous conduct that caused Plaintiff to suffer emotional distress. (Compl. at 18 ¶ 2.) However, wrongful termination alone cannot justify a claim for IIED. Generally, in this Circuit, "decisions to discharge an employee have not been found to constitute intentional infliction of emotional distress." *Borecki v. Eastern Int'l Mgmt. Corp.*, 694 F. Supp. 47, 61 (D.N.J. 1988). Indeed, courts rarely find that employment decisions "rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 348 (D.N.J. 2006) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). The allegations contained in the Complaint, without more, do not rise to the

level of extreme and outrageous conduct required for this cause of action. As such, Defendants' motion to dismiss Count Four is granted.

### E. Wrongful Death (Count Six)

In New Jersey, "the Wrongful Death Act provides to decedent's heirs a right of recovery for pecuniary damages for their direct losses as a result of their relative's death due to the tortious conduct of another." *Aronberg v. Tolbert*, 25 A.3d 1121, 1123 (N.J. 2011). Here, the Complaint alleges that the "intentional actions of the Defendants resulting in [Mr. Rickerson's] unjust termination from employment . . . [were] followed by his wrongful and untimely death." (Compl. at 20 ¶ 2.) However, Plaintiff does not plead a causal link between Pinnacle's termination of Mr. Rickerson on May 4, 2016 and his death on June 23, 2016. Thus, Defendants' motion to dismiss Count Six is granted.

### F. Survival Action (Count Seven)

To bring a survival action under New Jersey state law, Plaintiff must show

> that based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor . . . may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

N.J. STAT. ANN. § 2A:15-3; *Aronberg*, 25 A.3d at 1123 (noting that New Jersey law "permits, for the benefit of the decedent's estate, an appointed representative to file any personal cause of action that decedent could have brought had he lived"). The Complaint does not sufficiently link Mr. Rickerson's death to any wrongful or neglectful conduct by Defendants. Thus, the Complaint does not sufficiently plead a survivorship action. Defendants' motion to dismiss Count Seven is granted.

### G. Fraud (Count Eight)

To bring a fraud claim under New Jersey law, Plaintiff must sufficiently plead: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Virginia Sur. Co. v. Macedo*, No. 08-5586, 2011 U.S. Dist. LEXIS 49077, *at 53-56 (D.N.J. May 6, 2011) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)). Claims for common-law fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that that "the circumstances constituting fraud . . . shall be stated with particularity" including the who, what, where, when, and how of the alleged fraud. *See In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999). Here, the Complaint alleges only that the "actions of the Defendants constitute fraud at common law." (Compl. at 22 ¶ 2.) As pled, Plaintiff does not satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). Therefore, Defendants' motion to dismiss Count Eight is granted.

### H. Unjust Enrichment (Count Nine)

Under New Jersey law, a cause of action for unjust enrichment requires that Plaintiff plead: "(1) the defendant received a benefit, (2) at the plaintiff's expense, and (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Jurista v. Amerinox Processing, Inc.*, No.12-3825, 2013 U.S. Dist. LEXIS 49515, at *80-81 (D.N.J. Apr. 5, 2013). Here, Plaintiff alleges in conclusory fashion that "Defendants' conduct described above has caused Defendants to become unjustly enriched." (Compl. at 22 ¶ 2.) Without more, the Complaint does not establish a cause of action for unjust enrichment. Therefore, Defendants' motion to dismiss Count Nine is granted.

### I. Loss of Consortium (Count Five)

A claim for loss of consortium cannot be maintained as an independent cause of action. *Ali v. Jersey City Parking Auth.*, No. 2:13-cv-02678, 2014 U.S. Dist. LEXIS 52547, at *19 (D.N.J. Apr. 16, 2014). Rather, "[l]oss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse." *Reiff v. Convergent Techn.*, 957 F. Supp. 573, 584 (D.N.J. 1997). The purpose of a loss of consortium claim is to compensate for the loss of a spouse's companionship and services resulting from an injury. *See Kibble v. Weeks Dredging & Constr. Co.*, 735 A.2d 1142, 1149 (N.J. 1999). However, loss of consortium claims may not be predicated on whistle-blower statutes like CEPA. *Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 773 (D.N.J. 1998). Here, Plaintiff's underlying claims, with the exception of the CEPA claim, have been dismissed for the reasons set forth above. Accordingly, Defendants' motion to dismiss Count Five is granted**.**

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED** as to Count One and **GRANTED** as to Counts Two through Nine. Plaintiff may file an amended complaint within thirty (30) days. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
Parties